**David SIEGEL, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

No. 108, Docket 35028.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1970.

Decided Dec. 14, 1970.

Milton Adler, New York City, The Legal Aid Society, Phylis Skloot Bamberger, New York City, of counsel, for defendant-appellant.

Whitney North Seymour, U. S. Atty., S.D.N.Y., Henry Putzel, III and Thomas J. Fitzpatrick, Asst. U. S. Attys., of counsel, for plaintiff-appellee.

Before CLARK, Associate Justice, Supreme Court of the United States, Retired,* LUMBARD, Chief Judge and KAUFMAN, Circuit Judge.

CLARK, Associate Justice, Retired:

This is an appeal from two orders of the United States District Court for the Southern District of New York denying, without a hearing, (1) a motion pursuant to § 2255 of Title 28, United States Code, to set aside a judgment of conviction on a plea of guilty on two counts of an indictment charging interstate transportation of forged checks and to vacate the sentence thereon; and (2) a motion pursuant to Rule 35, F.R.Crim.P. to correct the sentence pursuant to § 3568 Title 18, United States Code. This court granted appellant leave to appeal *in forma pauperis.*

The Appellant, David Siegel, was indicted on September 14, 1964, in the United States District Court for the District of Nevada on two counts charging interstate transporation of forged securities in violation of § 2314 of Title 18, United States Code. By consent under Rule 20 of the F.R.Crim.P., the United States District Court transferred the case to the United States District Court for the Southern District of New York. On October 31, 1966, while an inmate of Sing Sing Prison, where he was serving an unrelated sentence imposed under New York law, appellant was taken to the Federal House of Detention by agreement with New York authorities, and on December 2, 1966, pleaded guilty to both counts of the federal indictment. On January 27, 1967, after three adjournments, all at appellant's request, he was sentenced to the maximum term of ten years' imprisonment on the first count and to a subsequent five-year period of unsupervised probation on the second count. Although represented throughout these proceedings by retained counsel,

Siegel never appealed from this judgment.

After the entry of his plea on December 6, 1966, the appellant was returned to the Federal House of Detention. On January 23, 1967, he fell down a flight of steps at the House and was taken to Bellevue Hospital for treatment. He claimed to be suffering from paralysis of the lower part of his body, bruises to his shoulders and neck and a slight concussion. However it was the opinion of two neurologists after examination and observation that appellant's claims were "purely malingering," and the Court, therefore, proceeded to sentence appellant, as aforesaid, on January 27, 1967. He was then returned to Sing Sing Prison.

Soon thereafter appellant wrote two letters to the sentencing judge, alleging that his plea had been "fraudulently coerced" by his attorney. The letters were treated as motions to set aside the plea of guilty under Rule 32(d) F.R.Crim.P. and both were denied on February 16, 1967, on the papers. A third motion alleging that his attorney had not been admitted to the Bar of the United States District Court for the Southern District was denied on the papers on July 13, 1967, and is now pending here, awaiting appellant's brief on the denial of *in forma pauperis* relief.

The present § 2255 application was subsequently filed. It alleges that the guilty plea was coerced by the prosecutor, the judge and appellant's own counsel; that he was innocent of the crime charged and so advised his lawyer but he was induced to plead guilty by the promises of another judge of the Southern District and an assistant United States Attorney that he would get a 2-year concurrent sentence; that his guilty plea was entered in ignorance and misapprehension of the law; and, finally, that at the time of sentence, on January 27, 1967, he was in great pain from the fall down the staircase and was under medication which rendered him incom-

---

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

petent. This motion was denied without a hearing on August 20, 1968. Subsequently appellant moved to correct his sentence under Rule 35 F.R.Crim.P. The gist of this claim is that he was entitled to credit under § 3568 of Title 18, United States Code, for the time he served subsequent to his plea of guilty and while awaiting sentence, a period of 142 days. This motion was denied on February 24, 1969. Appellant then filed a motion to vacate his sentence on the ground that the District Court in the Southern District of New York lacked jurisdiction. It was denied on September 12, 1969, and no appeal was taken.

1. At the outset we note that the minutes of the hearing at which appellant entered his plea of guilty clearly show the meticulous care the judge exercised in accepting the plea. After the Clerk read the indictment to the appellant and he said that he understood "the two charges," the judge inquired how he pled, and he answered "Guilty * * to both counts." The judge then asked if he understood that "all that remains to be done is * * * to impose sentence * * *"; that the maximum sentence on each count was ten years and a fine of up to $10,000 or both. Appellant answered: "Yes, sir." And, furthermore, the judge warned the jail sentence might be 20 years and still appellant said he understood and wished to plead guilty. He was then asked: "Did anybody make any promises to you * * * as to what might happen in the way of a sentence or anything else if you came in and changed your plea here?" And appellant answered: "No, your Honor." And when asked if anybody made any threats against him in order to force him to change his plea from guilty to not guilty, again he answered, "No, your Honor." He was then asked if he knew "this means that you are admitting guilt on both counts, and he said: "Yes, your Honor." Appellant was then asked if he admitted "those facts right here in open court," and he said: "Yes, sir." And, the judge added, "without any reservation on your mind

whatsoever," and the repeated answer was: "Yes, sir." Appellant also said that he was physically "okay" although "nervous, your Honor."

■ In the light of these detailed admissions we find no reason to require a hearing on the claim of inducement or ignorance or misapprehension of the law with reference to the plea. The judge explained the law in detail, and appellant stated that he understood and twice denied categorically that he had been overreached. The present claims are vague, conclusory assertions without supporting facts with some probability of verity. Mitchell v. United States, 359 F.2d 833 (7th Cir. 1966); Malone v. United States, 299 F.2d 254 (6th Cir.), cert. denied 371 U.S. 863, 83 S.Ct. 122, 9 L.Ed. 2d 100 (1962). Also see Semet v. United States, 369 F.2d 90 (10th Cir. 1966); Swepston v. United States, 289 F.2d 166 (8th Cir. 1961), cert. denied 369 U.S. 812, 82 S.Ct. 689, 7 L.Ed.2d 612 (1962).

2. Reaching the allegations with regard to the sentence, the appellant alleges that he was incompetent to participate in this procedure because he was in great pain due to the fall which occurred the day before at the Federal House of Detention and that he was under the influence of sedatives. He further claims that some discussion took place out of court and prior to sentence concerning his cooperation with the authorities but no account of this was taken in pronouncing sentence; and, finally, that he was not given credit for the time that he was held in the Federal House of Detention subsequent to his plea and prior to the imposition of sentence.

■ As to the fall that appellant suffered while an inmate at the Federal House of Detention, it hardly presents any cause for relief from the plea since it occurred subsequently. And, as to the sentence, the minutes of that hearing amply refute appellant's claims. The doctor's report was entirely to the contrary, declaring that appellant's symptoms were negative. Moreover, after appellant's counsel made a plea for leniency

and the appellant himself was advised that he could address the court, he did so, the minutes recording the following:

"The Defendant: Mr. Horan covered everything, Your Honor. I just hope that your Honor would understand it. Ever since all this here happened, this came about after the crime for which I'm here for, and that I'm doing two and a half to four and a half years in the State for—an academic matter to this one, and I just hope you take that into consideration and understand me."

This statement reveals no incoherency on appellant's part. The record also shows that when appellant asked for an additional adjournment of his sentence hearing, which if granted would have been the fourth, the court called a recess and gave appellant at least a half hour in which to talk with his counsel. At no time was anything said or indicated that appellant was not in full control of his faculties. Neither he nor his counsel complained about the fall or claimed that it or the administration of sedatives rendered appellant in the least bit incompetent to understand what was occurring at the hearing. The judge in fact noted that "it appeared to us that Siegel was lucid in addressing the court." Furthermore, we note that this claim was not made for over a year subsequent although in the interim appellant filed several other motions, letters, etc. in which no mention was made of it. Simmons v. United States, 302 F.2d 71, 77–78 (3d Cir. 1962).

As to any discussion with reference to the cooperation of the appellant, the record does indicate that a colloquy which occurred at a prior sitting of the sentencing hearing between appellant's counsel and the sentencing judge alluded to this topic. However, counsel at the time of the sentence said that the matter to which the judge referred him "had been taken care of a few years ago * * I wish to submit this paper to your Honor." Apparently the paper—which is not in the record—was helpful to the appellant since his federal sentence permitted him to receive credit for the subsequent period that he served on his state sentence.

3. Appellant also urges that he is entitled to credit for the time he served from the acceptance of his guilty plea to the date of his sentence. He received credit for this time on his state sentence and it would be tantamount to double time if also credited on the federal sentence. See Jefferson v. United States, 389 F.2d 385 (2d Cir. 1968). But appellant claims that the 1966 Amendment to § 3568 requires credit for such time. This is an absurdity which we refuse to attribute to Congress. The legislative history of this Amendment clearly reveals that it was intended to confer credit for time spent in federal custody by a prisoner to prevent a judge from frustrating the will of Congress by adding a comparable period to that served while awaiting sentence to the sentence itself; and, finally, to extend the provision to all federal crimes rather than only to those requiring minimum mandatory sentences. See United States v. Tomaiolo, 294 F.Supp. 1296 (E.D.N.Y. 1969). Section 3568 merely allows credit for all of the time that a prisoner is deprived of while held in custody in connection with the "offenses or acts" on which he was sentenced. Appellant was being held on his state sentence—not his federal one—and was made available to federal authorities purely as a matter of comity. The cases cited by appellant are inapposite.

Affirmed.