# State of Vermont v. Gerald W. Blondin

[665 A.2d 587]

No. 94-048

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 28, 1995

*Robert Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, and *John W. Kessler*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Johnson, J.** Petitioner appeals the district court's ruling that he is not entitled to presentence credit for time served because he had already received credit for that time toward a prior sentence. We affirm.

On June 27, 1993, while on parole in connection with a 1969 second-degree murder conviction, petitioner was arrested for simple assault and unlawful mischief. The new charges also constituted parole violations, which triggered revocation proceedings that were initiated that same day. Petitioner was arraigned on the new charges on June 29, but failed to post the required bond; accordingly, a mittimus issued for his pretrial detention. On July 20, 1993, petitioner's parole was revoked and he was given credit toward his paroled sentence for the time he spent in custody following his June arrest. On December 13, 1993, petitioner was convicted of simple assault and acquitted of unlawful mischief. On January 5, 1994, he was sentenced to eleven-to-twelve months to be served consecutively to the paroled sentence. Petitioner requested credit for the six months he spent in custody serving the underlying sentence before his sentencing on the assault conviction. The trial court denied any credit and petitioner appealed.

Petitioner argues that the plain meaning of 13 V.S.A. § 7031(b) and the case law construing the statute require that he be given credit for the six months he spent in jail before he was sentenced on the simple assault conviction, notwithstanding that (1) he received credit toward his underlying murder sentence for the three weeks he spent in jail before his parole was revoked, and (2) for the other five months, he was serving the underlying sentence. In short, defendant seeks double credit for the six months he spent in jail between June 1993 and January 1994 — credit toward both his underlying sentence and his new sentence — even though the district court determined that the sentences should be served consecutively.

■ We decline to grant the double credit defendant seeks, which would, in effect, make the underlying and new sentences concurrent for the six-month period. See *Emerson v. State*, 498 N.E.2d 1301, 1302–03 (Ind. Ct. App. 1986) (if defendant were granted presentence credit against sentence imposed for escape in addition to credit for sentence being served at time of escape, effect would be to impose concurrent sentence for portion of escape sentence, despite fact that sentences were imposed consecutively). The plain meaning of 13 V.S.A. § 7031(b) does not require that parole violators who are jailed and do not make bail on new charges be given double credit for time

served before imposition of either the new or the underlying sentence, whichever comes later, even if the sentences are imposed consecutively. Such an irrational result would be contrary to the view of the vast majority of courts construing virtually identical statutes in similar situations. More importantly, it would undermine the trial court's ability to impose consecutive sentences, and would provide incentives for both defendants and the State to try to manipulate the timing of judicial proceedings so as to shorten or lengthen the ultimate sentence served.

Such absurd consequences need not follow from § 7031(b), which requires that credit be given "for any days spent in custody in connection with the offense for which sentence was imposed." Section 7031(b) does not address the circumstances present in this case and does not specifically authorize double credit for jail time. On many occasions, we have held that our overriding goal is to construe a statute according to the legislature's purpose and intent, and that we are not confined to a literal reading of the statute if applying its plain language would conflict with its purpose or lead to unjust, absurd, or irrational consequences.[1] E.g., *State v. Forcier*, 162 Vt. 71, 74–75, 643 A.2d 1200, 1202 (1994); *State v. Therrien*, 161 Vt. 26, 31, 633 A.2d 272, 275 (1993); *State v. Papazoni*, 159 Vt. 578, 580–81, 622 A.2d 501, 503 (1993); *State v. Caron*, 155 Vt. 492, 513, 586 A.2d 1127, 1139 (1990). As we have stated before, the purpose of § 7031(b) is to ensure that offenders unable to make bail do not serve a longer sentence than more affluent defendants who are able to make bail and avoid pretrial incarceration. *In re Perry*, 137 Vt. 168, 170, 400 A.2d 1013, 1015 (1979). Giving defendant double credit under the present circumstances would do nothing to further that purpose, notwithstanding his claims to the contrary.

Federal and state courts reviewing almost identical statutes in analogous situations have not felt constrained by the plain-meaning rule to award double credit toward consecutively imposed sentences. Section 7031(b) is modeled after a virtually identical federal statute that was enacted in response to two United States Supreme Court opinions mandating credit for presentence jail time. Compare 13 V.S.A. § 7031(b) ("The court shall give the person credit toward

---

[1] We recognize that penal statutes generally are construed favorably to the accused, *State v. Oliver*, 151 Vt. 626, 629, 563 A.2d 1002, 1004 (1989); however, 13 V.S.A. § 7031 is primarily administrative in nature and not truly penal because it neither defines an offense nor prescribes a punishment. See *Endell v. Johnson*, 738 P.2d 769, 771 n.1 (Alaska Ct. App. 1987).

service of his sentence for any days spent in custody in connection with the offense for which sentence was imposed.") with 18 U.S.C. § 3568 ("The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.").[2] The federal courts have unanimously refused to allow double credit under § 3568 in situations similar to the one presented here. See *State v. Boettcher*, 423 N.W.2d 533, 536–37 (Wis. 1988) ("federal courts have been unanimous in concluding that, in the case of consecutive sentences, there is no requirement that there be a time credit against more than one sentence"; "federal courts are firm and unanimous that there shall be no dual credit for the same presentence time served").

For example, in *Doyle v. Elsea*, 658 F.2d 512 (7th Cir. 1981), a parolee was arrested and jailed on the charge of interstate transportation of forged travelers' checks. A week later, a parole violation warrant was issued against the defendant; as a result of the warrant, the bondsman refused to bail him out, and he was unable to raise the full amount of bail in cash. He remained incarcerated for four months before he was convicted and sentenced for the new offense in 1978. Some time after the conviction, the parole violation warrant was lodged as a detainer against the defendant. Two years later, his parole was revoked, and he sought credit toward his underlying sentence for the four months he spent in jail before being convicted on the new offense.[3] The district court granted the request, reasoning that his pretrial custody was "in connection with" his parole violation. In overruling the district court, the Seventh Circuit held as follows:

> Doyle would have this court . . . hold that such credit must be granted without regard to whether the credit was also applied to the arrest-related sentence. Such a rule would

---

[2] 18 U.S.C. § 3568 has since been amended and renumbered to 18 U.S.C. § 3585(b). The statute no longer contains the "in connection with" language, but rather mandates credit for detention time served "as a result of the offense for which the sentence was imposed." The change in language has had no effect with respect to the issue considered here. Indeed, the amended statute expressly adopted prior federal cases disallowing double credit. See *State v. Morrick*, 432 N.W.2d 654, 657 n.2 (Wis. Ct. App. 1988).

[3] Apparently, the defendant in *Doyle* did not request double credit for time served following his conviction on the new offense. Such a request, as discussed *infra*, would probably have been denied by the federal district court even if it had imposed concurrent sentences.

disregard the practical realities of the case before us. We therefore decline to adopt it.

As a practical matter, Doyle spent four months in pretrial custody for two reasons: because he was accused of committing a crime, and because he was accused of violating his parole. It seems obvious — and not particularly unusual — that he was in pretrial custody "in connection with" both the violator term and the 1978 sentence. Therefore, under section 3568, he is entitled to receive credit for the pretrial custody. *That is not to say that he is entitled to double credit.* It simply means that he is entitled to have the total amount of time he must spend in prison under his two sentences reduced by the amount of time he spent in pretrial custody.

There is no dispute that Doyle received credit on his 1978 sentence for the full period he spent in pretrial custody. *Because the parole violator term was ordered to run consecutively to the 1978 sentence, the effect of applying the credit to the 1978 sentence was to reduce the total amount of time Doyle must actually spend in prison by four months. That, and no more, is what Doyle is due under section 3568.*

*Id.* at 515 (emphasis added); see *Wolcott v. Norton*, 365 F. Supp. 138, 140 (D. Conn. 1973) (Congress did not intend § 3568 to credit state pretrial detention time toward state sentence and again toward underlying federal sentence imposed due to parole violation; other courts faced with similar claims have declined to award double credit); *Echeandia v. United States Attorney General*, 339 F. Supp. 272, 273 (S.D.N.Y. 1972) (accord).

Courts in other jurisdictions that have statutes modeled after § 3568 have also refused to grant double credit in situations like the one presented here. For example, construing a statute nearly identical to ours in relevant part, the Wisconsin Supreme Court reversed a court of appeal's ruling giving double credit under similar circumstances. *Boettcher*, 423 N.W.2d at 534. In that case, a probationer was arrested on a probation-hold warrant for being in possession of a handgun. The court noted that it was unclear whether the probationer was taken into custody for the crime of being a felon in possession of a handgun or for violating conditions of probation, but assumed for purposes of argument that he was being held for both of those reasons. *Id.* at 534 n.1. The probationer spent ten days in jail before

being released from custody on the firearms charge on a signature bond; however, he remained in custody under the probation hold. His probation was revoked and the underlying sentence imposed three months later. Two days after revocation of his probation, he pled no contest to the firearms charge. The trial court refused to allow any credit for preconviction custody toward the firearms sentence. The court of appeals ruled that he should receive credit for the ten days he was held on both the new charge and the probation-violation warrant. The supreme court reversed, holding that double credit was inappropriate under the statute. *Id.* at 534. According to the court,

> custody credits should be applied in a mathematically linear fashion. The total time in custody should be credited on a day-for-day basis against the total days imposed in the *consecutive* sentences. For ease in calculation and clarity in respect to subsequent exercise of court discretion, the credits should be applied to the sentence that is first imposed.

*Id.* at 539 (emphasis added); see *Endell v. Johnson*, 738 P.2d 769, 771 (Alaska Ct. App. 1987) (construing "in connection with" statute, court refused to award double credit toward new sentence imposed consecutively to underlying sentence reinstated after probation violation); *State v. Whitney*, 768 P.2d 638, 649 (Ariz. 1989) (defendant not entitled to double credit against consecutively imposed sentences for parole violation and new offense); *Mills v. Commonwealth*, 723 S.W.2d 859, 860–61 (Ky. Ct. App. 1986) (accord). But see *State v. Ramzy*, 649 P.2d 504, 506 (N.M. Ct. App. 1982) (defendant who failed to make bail on new offense committed while he was free on appeal bond was entitled to credit toward new sentence for jail time spent while serving term for underlying sentence following revocation of appeal bond).

Some courts have gone even further, holding that once either the underlying sentence or the sentence for the new offense is imposed, no double credit is allowed for jail time served before imposition of the second sentence, even if the sentences are imposed concurrently. See *Shelvy v. Whitfield*, 718 F.2d 441, 446 (D.C. Cir. 1983) (defendant "is entitled to presentence credit only for days of incarceration during which he was not serving any sentence"); *Ali v. District of Columbia*, 612 A.2d 228, 229–30 (D.C. 1992) (it is generally accepted that preconviction credit on new charge ceases at time parole violation warrant is executed; because defendant received credit against underlying conviction, he was not entitled to credit against new

offense after execution of warrant). In *Shelvy*, the court reached its decision based on the language of § 3568 and Congress's consistently expressed intent to grant defendants credit only for confinement before and during trial, not for postsentence custody. *Shelvy*, 718 F.2d at 444, 446; cf. *Wolcott*, 365 F. Supp. at 140 (no basis for concluding that Congress intended § 3568 to provide credit against defendant's underlying federal sentence for time spent in jail after defendant began serving state sentence for offense that led to revocation of federal parole). According to the court, it would be artificial to hold that time spent in jail for one sentence is still "in connection with" other charges not yet adjudicated. *Shelvy*, 718 F.2d at 444.

In our view, this position is unacceptable for the same reasons that double credit is inappropriate when sentences are imposed consecutively — it is illogical and unfair, and it would undermine the trial court's control over sentencing. See *State v. Carson*, 393 N.W.2d 382, 384 (Minn. Ct. App. 1986) (trial court imposed concurrent sentences for probation violation and for new offense that led to revocation of probation; denial of credit against either sentence for time spent in jail before imposition of second sentence would impose de facto consecutive sentence to extent that there was any delay in revoking probation and executing underlying sentence). If we were to adopt the position taken in *Shelvy* and *Ali*, the length of a defendant's ultimate sentence would turn on when the underlying and new sentences were imposed, which would be subject to the parties' manipulation and to irrelevant factors such as whether the defendant pled guilty or demanded a jury trial. See *State v. Dulski*, 363 N.W.2d 307, 310 (Minn. 1985).

■ Accordingly, we hold that when a defendant is incarcerated based on conduct that leads both to revocation of probation or parole and to conviction on new charges, the time spent in jail before the second sentence is imposed should be credited toward only the first sentence if the second sentence is imposed consecutively, but toward both sentences if the second sentence is imposed concurrently. See *id.* at 309 (in determining whether to give double credit for period of incarceration between imposition of sentences, "crucial factor" is whether sentences are to be served concurrently or consecutively); see also *Daniels v. State*, 491 So. 2d 543, 545 (Fla. 1986) (accord). We realize that this holding will probably not be the final word from this Court in a complex area of the law that often requires case-by-case analysis, but it is a fair and straightforward benchmark that gives the trial court, rather than the parties, control over sentencing.

Moreover, this holding is consistent with most of our prior cases on custody credit. In related contexts, this Court has refused to give double credit toward consecutive sentences. For example, in *Perry*, we rejected the defendant's contention that § 7031(b) required compounding of jail time credit for consecutive sentences, pointing out that the purpose of the statute was not to award double credit, but rather to assure that an individual is not subjected to imprisonment solely because of indigency. 137 Vt. at 170–71, 400 A.2d at 1015. We reaffirmed this reasoning in *State v. Percy*, 158 Vt. 410, 421–22, 612 A.2d 1119, 1127 (1992), where we held that only a single credit for pretrial jail time should be allowed toward four consecutively imposed sentences.

Although both *Perry* and *Percy* are factually distinguishable from the present case, a literal reading of § 7031(b) would have required the opposite result in both cases. In *Percy*, the pretrial custody was, without doubt, "in connection with" each of the four offenses for which the defendant was convicted and sentenced, and thus quadruple credits would have been due under a literal reading of the statute. Indeed, in a similar case, the Connecticut Supreme Court felt compelled to award credit against each of several consecutively imposed sentences because of its prior holding in *Mancinone v. Warden*, 294 A.2d 564, 568 (Conn. 1972). See *Delevieleuse v. Manson*, 439 A.2d 1055, 1058 (Conn. 1981) (although concurrent sentences had been imposed in *Mancinone*, custody credit statute does not distinguish between concurrent and consecutive sentences; therefore, plain meaning required that double credit be awarded).[4] In short, the plain meaning of § 7031(b) does not compel reversal here any more than it did in *Percy*.

Nor does the plain meaning of § 7031(b) require reversal here any more than it did in *State v. Coe*, 150 Vt. 448, 554 A.2d 656 (1988). In that case, the defendant was arrested for assault in New York while he was on probation in Vermont. A Vermont arrest warrant on the probation violation was obtained approximately halfway through the defendant's six-month New York sentence, and he was returned to Vermont after completing that sentence. Two months later, his probation was revoked, and the underlying sentence was reinstated. We affirmed the trial court's refusal to give defendant credit toward the reinstated sentence for time served in New York. Rejecting the

---

[4]The Connecticut legislature changed its presentence statute in direct response to the *Mancinone* decision. *Payton v. Albert*, 547 A.2d 1, 4 (Conn. 1988).

defendant's argument that the time he served in New York was "in connection with" the offense for which his probation was revoked, we held that a Vermont defendant seeking presentence credit for jail time in another jurisdiction had to show that the custody resulted solely from the Vermont detainer. *Id.* at 452, 554 A.2d at 659. A plain-meaning analysis similar to the one espoused by defendant would have precluded this logical holding.

To bolster his argument, defendant relies primarily on two Vermont cases, *In re Lampman*, 135 Vt. 226, 373 A.2d 547 (1977), and *In re Zera*, 137 Vt. 421, 406 A.2d 396 (1979). Although *Lampman* contains language favorable to defendant's position, it involved concurrently imposed sentences; therefore, it is distinguishable from the present case, and its result is consistent with our holding today. Further, both *Lampman* and *Zera* were escape cases in which this Court relied on stipulations from the parties stating that confinement was more restrictive than it had been before the defendants escaped.

In *Zera*, the defendant refused to accept release on personal recognizance after being arrested for failing to return from furlough. He pled guilty to escape and, four months after his arrest, was sentenced to a term to be served consecutively with the sentence he had been serving. The trial court refused to give the defendant credit for three months he spent in jail between his arraignment on the escape charge and his commitment for observation to evaluate his sanity. This Court reversed that decision based on the plain meaning of § 7031(b), as well as the following reasoning:

> The parties have stipulated that, as a matter of policy in Vermont, inmates posing a threat to the security of the institution are confined in areas separate and apart from the regular programs of the institution; that such inmates are not eligible for furlough, work-release, passes, or outside supervised work crews; and further that, subsequent to the petitioner's nonacceptance of release on personal recognizance, *this policy was applied to him.* The fact that the petitioner was subjected to more restrictive conditions of confinement following his arraignment on the escape charge provides additional support for our holding that the petitioner's incarceration was "in connection with the offense charged" within the meaning of 13 V.S.A. § 7031(b). This refutes the conclusion of the superior court that the time the petitioner spent in custody was "for other reasons." *The record clearly reveals that the more restrictive conditions*

*were imposed because the petitioner had escaped,* the very incident for which he was arraigned, and in connection with which personal recognizance was offered and refused. *On this record, the petitioner's custody was in connection with the offense charged.*

*Zera,* 137 Vt. at 424–25, 406 A.2d at 398 (emphasis added).

In the present case, in contrast, defendant made no showing whatsoever that his failure to post bail on the assault charge resulted in more restrictive confinement than what would have been imposed upon revocation of his parole had he made bail on the assault charge. Undoubtedly, defendant did not post bail simply because it would not have resulted in his being freed from custody. We decline to reward those defendants who do not post bail in such circumstances by granting them double credit for jail time between imposition of the first and second sentence. See *Endell,* 738 P.2d at 771 (rejecting double credit to probationer under similar circumstances, court noted that those who posted bail but continued to be held on another charge would actually be penalized for doing so).

On appeal, defendant can point out only that his status as a detainee pending prosecution required permission of the court and the prosecuting attorney before he could be allowed access to furlough and work-release programs. See 28 V.S.A. § 759(b). He does not argue that he sought, or was denied, such permission, or that he would have received such privileges had he made bail on the new charges. Thus, *Zera* is distinguishable from the present case. In any event, we overrule *Zera* to the extent it is inconsistent with today's holding. See, e.g., *State v. Weaver,* 762 P.2d 1361, 1364–65 (Ariz. Ct. App. 1988) (crediting both underlying sentence and consecutive sentence for escape with same presentence incarceration gives double credit and is therefore improper); *Jorgensen v. State,* 559 N.E.2d 616, 618 (Ind. Ct. App. 1990) (because defendant was serving murder sentence at same time she was awaiting sentence for escape, any credit for that time would have been double credit to which she was not entitled under statute). We affirm the trial court's refusal to grant defendant double credit for time served before he was sentenced on his assault conviction.

*Affirmed.*

**Allen, C.J.,** dissenting. I dissent from today's holding because I believe the plain meaning of 13 V.S.A. § 7031(b) requires the trial

court to credit defendant for days spent in detention in connection with the second offense.

I do not agree with the majority's assertion that its holding is consistent with our prior cases. We have applied the plain meaning of § 7031(b) to all of our presentence credit determinations for nearly two decades. See, e.g., *In re Lampman*, 135 Vt. 226, 228, 373 A.2d 547, 548 (1977) (credit allowed for time in question, even though part of previous sentence was also "spent in custody *in connection with* the [subsequent] escape charge"). We relied on the plain meaning of § 7031(b) notwithstanding much of the federal case law now cited by the majority. But today the majority has taken it upon itself to effectively redraft the statute in an effort to reach what it believes is a more reasonable result.

To justify abandoning our precedent, the majority imagines a "logical extreme" in which a defendant receives quadruple credit for sentences to be consecutively served. Ironically, this Court has already entertained such a hypothetical in *State v. Percy*, 158 Vt. 410, 421, 612 A.2d 1119, 1127 (1992). In *Percy*, we eschewed an over-literal interpretation and instead applied the plain meaning and achieved a principled result consistent with the statute's legislative purpose. Specifically, we rejected Percy's argument that he receive credit for forty years rather than ten years, because the purpose of § 7031(b) was to provide equal sentencing treatment for persons who could not raise bail.[1] *Id.* at 422, 612 A.2d at 1127. We concluded that where sentences are imposed consecutively, credit shall be applied toward *one* but not all subsequent sentences. *Id.* at 421–22, 612 A.2d at 1127. Significantly, Percy received a single credit toward one of the four subsequent charges for time he also served against his first conviction.

The majority's reliance on *Zera*'s dictum as additional justification to stray from the plain meaning is equally unpersuasive. *Zera*'s discussion of stricter release conditions supported the Court's application of the plain meaning by pointing out that the more restrictive conditions demonstrated that Zera was serving time in connection with the escape charge. *In re Zera*, 137 Vt. 421, 424–25, 406 A.2d 396, 398 (1979).

---

[1] Percy was convicted of sexual assault and received an eighteen-to-twenty-year sentence in his first trial. At a second trial for crimes committed while he was awaiting his first trial, Percy was convicted and given four additional sentences totalling forty-two to sixty years. These subsequent sentences were to be served consecutively to the first sentence. We affirmed the trial court award of ten-years' credit towards Percy's subsequent sentences for time spent in custody prior to the second trial.

I also disagree with the majority's alternative construction because it does nothing to further the legislative purpose of § 7031(b). See *Marden v. Walton*, 142 Vt. 204, 207, 455 A.2d 321, 322 (1982) (this Court should construe statute to effectuate legislative intent). The purpose of § 7031(b) is to ensure that offenders unable to make bail serve a sentence no longer than more affluent defendants who are free on bail before a conviction. *In re Perry*, 137 Vt. 168, 170, 400 A.2d 1013, 1015 (1979). As we explained, the proper limiting factor of § 7031(b) is whether the time served is "in connection with" the offense for which credit is sought. *Marden*, 142 Vt. at 207, 455 A.2d at 322.

Under the revised construction, if the conduct that leads to revocation of parole also leads to a conviction on new charges, defendant is allowed credit only toward the paroled sentence. The controlling inquiry is now whether parole is ultimately revoked, not whether defendant is detained because he could not afford bail. "'If [the legislature] had wished to exclude from the operation of the statutes those who would not be released from custody even if they posted bail that exception could easily have been spelled out.'" *In re Lampman*, 135 Vt. at 229, 373 A.2d at 548 (quoting *Mancinone v. Warden*, 294 A.2d 564, 568 (Conn. 1972)).

The statute plainly requires the court to give presentence credit for "any days spent in custody in connection with the offense for which sentence was imposed." 13 V.S.A. § 7031(b). The statute does not proscribe credit for time served concurrently with another sentence or pending parole revocation hearings. See *People v. Simpson*, 174 Cal. Rptr. 790, 793 (Ct. App. 1981) (plain meaning of presentence credit statute provides no exceptions and permits credit for presentence detention notwithstanding parole board's simultaneous credits). We should not read such exceptions into the statute.[2] See *Marden*, 142 Vt. at 207, 455 A.2d at 322 (Court may not by judicial interpretation expand the language or plain meaning of statute). Our obligation is to enforce the statute according to its terms. Revising the purpose and effect of § 7031(b) is the Legislature's responsibility. The majority's suggestion that without revising our interpretation of § 7031(b) the parties would be enticed into manipulating the timing of judicial proceedings is pure conjecture. In addition, I do not see how

---

[2] Notably, had the parole board authorized defendant's release pending revocation hearings, 28 V.S.A. § 551(e), his pretrial detention would have required credit towards the subsequent offense.

the application of the plain meaning restricts the trial court's control over sentencing. Establishing sentencing guidelines is the Legislature's province; implementing them is the judiciary's domain.

Because defendant's pretrial detention was imposed in connection with the new charges, the trial court decision denying defendant credit for time spent in jail in connection with the assault charge should be reversed.