## Frank and Ann Dykstra v. Property Valuation and Review Division

[591 A.2d 63]

No. 90-566

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed March 22, 1991

216

*Kevin E. Brown of Langrock Sperry & Wool*, Middlebury, for
Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *Jacqueline A.
Hughes*, Special Assistant Attorney General, Montpelier, for
Defendant-Appellee.

**Gibson, J.** Frank and Ann Dykstra appeal from an order of
the State Board of Appraisers directing them to repay to the
state $3,354.07 in tax benefits previously received under the
Working Farm Tax Abatement Program (WFTAP), 32 V.S.A.
§§ 3764–3775. We affirm.

The Dykstras enrolled their 267-acre New Haven farm in
WFTAP beginning April 1, 1989, and thereafter leased the
property to their son Andrew to operate as a farm. On April 12,
1990 they conveyed all but 10.11 acres to Joseph W. Devall, who
was not a farmer within the meaning of 32 V.S.A. § 3764(5). Mr.
Devall continued the lease to Andrew Dykstra, who continued

to operate the farm. On May 4, 1990, the director of the Division of Property Valuation and Review notified the Dykstras that the sale to Devall triggered conversion of the property to nonfarm use within the meaning of § 3764(2).* Although continuing the lease to Andrew Dykstra for farming purposes allowed the new owner to retain the property's eligibility for WFTAP, the Dykstras had "convey[ed] property enrolled in the program by deed" and none of the exceptions in § 3764(2) applied to their case. Since the property had been "converted to nonfarm use," the director sought repayment of the benefits the Dykstras had received. See 32 V.S.A. § 3774(a). The Dykstras appealed the Division's order to the State Board of Appraisers, which affirmed the ruling, and the present appeal followed.

■■ The parties do not differ on the effect of a sale of enrolled property under a literal reading of § 3764(2)(B). A property is converted to nonfarm use unless one of the stated exceptions applies. The exceptions provision of § 3764(2) states in relevant part:

> Notwithstanding the preceding, it shall not be considered a conversion to nonfarm use:
>
> (A) to convey property enrolled in the program to a *farmer* who maintains the property's status as eligible property.

(Emphasis added.) Since Joseph W. Devall was not a "farmer," the exception on its face did not apply to the transaction, and therefore, under § 3764(2) the property was deemed converted to nonfarm use.

The Dykstras argue that the result of this literal reading of the statute is irrational, since nonfarmers may enroll property that is leased to a farmer for a term of three years or more in the WFTAP program under § 3764(3). They argue that since a nonfarmer may partake in the WFTAP program via leasing to a farmer, conveyance from one owner leasing "eligible property" to another owner leasing the same property in the same manner should not trigger a conversion to nonfarm use.

---

* 32 V.S.A. § 3764(2)(B) provides in pertinent part:
    (2) "Conversion to nonfarm use" means:
        . . . .
        (B) to convey property enrolled in the program by deed . . . .

██ ██ We disagree that a statute distinguishing farmer transferees of enrolled property from nonfarmer transferees is necessarily irrational. Legislative enactments enjoy a presumption of validity, and "if any reasonable policy or purpose for the legislative classification may be conceived of, the enactment will be upheld." *Andrews v. Lathrop*, 132 Vt. 256, 259, 315 A.2d 860, 862 (1974). Here, the apparent purpose of § 3764(2) is to encourage owners of enrolled property who wish to sell their farms to transfer them to farmers, even though sales to nonfarmers might not render "eligible property" ineligible for WFTAP. Appellants have not suggested why such a legislative choice is so devoid of rationality as to overcome the presumption of constitutionality.

Appellants argue next that even if the statute is not irrational in a constitutional sense, giving effect to its "plain meaning" leads to a result that runs counter to the legislative purpose of the WFTAP program and subjects appellants to unjust and irrational results. We have in narrow and particular circumstances abandoned the general rule that the plain meaning of statutory language will control. See, e.g., *Noble v. Delaware & Hudson Ry.*, 142 Vt. 156, 159, 453 A.2d 1109, 1111 (1982). In that case, the defendant railroad company appealed a Transportation Board order directing it to maintain a fence between its property and the plaintiff's adjacent property. The railroad argued that the applicable statute limited Board jurisdiction to cases in which a railroad passed *through* another's property, not *adjacent* to it. We held that such a construction of the statute would create a right without a remedy and that jurisdiction in the Board was required to render the overall statute effective. *Id.* at 160, 453 A.2d at 1111.

██ The "irrational results" appellants cite in the present case boil down to an argument that the statute unfairly distinguishes between two classes of vendees from the owner of farmland enrolled under the WFTAP. Reasonable people may differ over whether such distinction is in the best interests of a program clearly designed to promote preservation of working farms, or whether the legislative distinction will discourage potential entrants because it reduces incentives. But this merely indicates that the matter is debatable. The plain meaning of the statute does not "clearly frustrate the legislative purpose of the

statutory scheme and produce an irrational result." *Id.* The Board was without error.

*Affirmed.*